UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHICO SCRAP METAL, INC., a California corporation; GEORGE W. SCOTT, SR., individually and as trustee of GEORGE W. SCOTT, SR. REVOCABLE INTER VIVOS TRUST DATED SEPTEMBER 25, 1995,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>DEBBIE RAPHAEL, in her official capacity as Director of California Department of Toxic Substances Control; LEONARD ROBINSON, in his official capacity as former Acting Director of the California Department of Toxic Substances Control; RAYMOND LECLERC, in his official capacity as the Assistant Deputy Director of California Department of Toxic Substances; DIANE SHERIDAN, in her official capacity as an employee of California Department of Toxic Substances Control; NANCY LANCASTER, an individual; SAMUEL MARTINEZ, JR, an individual; VIVIAN MURAI, an individual; STEVEN BECKER, an individual; LEONA WINNER, an individual; MICHAEL RAMSEY, in his official capacity as District Attorney of Butte | Case No. 2:11-CV-1201-JAM-CMK<br><br>ORDER GRANTING THE DISTRICT ATTORNEY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT |

1

County; HAROLD THOMAS, an
individual; GEORGE BARBER, an
individual; and DOES 1-20,
inclusive,

                    Defendants.

This matter comes before the court on Defendants Michael Ramsey in his official capacity, Harold Thomas in his individual capacity, and George Barber in his individual capacity's (collectively "Defendants") Motion to Dismiss First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(B)(1) and (6) (Doc. #31).[1] Plaintiffs Chico Scrap Metal, Inc., and George W. Scott, Sr., individually and as trustee of the George W. Scott, Sr. Revocable Inter Vivos Trust Dated September 25, 1995 (collectively "Plaintiffs") oppose the motion ("Opposition") (Doc. #47). Defendants filed a reply to Plaintiffs' opposition (Doc. #50).

### I.   FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

This action arises out of state enforcement of hazardous waste laws against Plaintiffs at four operating scrap metal facilities. Defendants, all associated with the Butte County District Attorney's Office, initiated an investigation and then allegedly acted with the Department of Toxic Substances Control ("DTSC"), members of which are also defendants in this action, to impose clean-up requirements on Plaintiffs' four commercial properties. Plaintiffs bring three causes of action against Defendants in their First Amended Complaint ("FAC") (Doc. #17). They seek (1) injunctive relief and (2) damages pursuant to 42 U.S.C. § 1983.

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was originally scheduled for September 21, 2011.

2

Plaintiffs also seek (3) a declaration of the Defendants' legal right to continue enforcing existing clean-up orders.

Beginning in 2007, DTSC working with Defendants investigated Plaintiffs for various criminal violations related to the operation of Chico Scrap Metal. Plaintiffs allege that the investigation was not intended to enforce California hazardous waste laws, but that the investigation was instead intended to produce revenue for DTSC and Defendants. Plaintiffs also allege that the motivation for the investigation was not to protect the public health or enforce the law because the primary motivation was revenue generation through the levying of fines and enforcement costs against Plaintiffs.

The investigation culminated in Plaintiffs' agreement to several DTSC consent orders requiring compliance with a DTSC monitored environmental remediation program. Further, Defendants filed criminal felony charges against Plaintiffs, leading to Plaintiffs' pleas of nolo contendere in exchange for a plea agreement. The plea agreement between Plaintiffs and Defendants referenced and incorporated the DTSC consent orders, requiring compliance with them as a term of Plaintiffs' probation.

A.  <u>Defendants' 2007 Investigation</u>

In 2007, Defendants started investigating Plaintiffs' business. The first sample taken from Plaintiffs' property was acquired by Defendant Barber and tested by DTSC. Plaintiffs allege that this sample, which was the basis for Defendants' investigation, was taken without a proper sampling plan and was tested improperly by DTSC. Plaintiffs claim that the sample was obtained through the reckless use of unsound testing methods in order to yield evidence of waste, which was subsequently

3

mischaracterized as hazardous. Plaintiffs allege the following improprieties: (1) Defendants had no sampling plan; (2) Defendants did not apply the proper scrap metal industry exemptions to the sample; and (3) the testing performed on the samples was done incorrectly.

### B. The DTSC Orders and Plaintiffs' Criminal Conviction

In 2008, both DTSC and Defendants carried out enforcement actions against Plaintiffs. After DTSC imposed an "Imminent Endangerment Order" shutting down one of Plaintiffs' sites, Plaintiffs agreed to consent orders that permitted DTSC to investigate and monitor Plaintiffs' businesses. The orders also required Plaintiffs to pay fees and costs to DTSC.

In October, 2008, Plaintiffs pleaded nolo contendere to a series of misdemeanors in state court pursuant to a plea agreement with Defendants. Defendants agreed to reduce all charges from felonies to misdemeanors. Plaintiffs agreed to pay $181,000 for investigation and cleanup costs incurred by DTSC up to that point. Further, Plaintiffs agreed to abide by the terms of the DTSC orders. Finally, Plaintiffs were fined $700,000 with $500,000 suspended pending successful completion of Plaintiffs' probation, but no term of imprisonment was imposed. While the plea agreement incorporates the DTSC orders, DTSC was not a party to the plea agreement.

### C. Events Leading to the Present Litigation

Plaintiffs allege that they began to question to necessity of DTSC and Defendants' actions for a number of reasons. First, Plaintiffs hired an independent expert in 2009 who was a former manager at the DTSC laboratory. That expert allegedly identified

4

various deficiencies in the testing system used by DTSC on samples taken from Plaintiffs' properties. Then, in 2010 and 2011, Plaintiffs allege that DTSC investigations at two out of four Chico Scrap Metal properties determined that no hazardous waste existed. Plaintiffs claim that DTSC was not willing to modify its orders, even though Plaintiffs' consultants determined that any problems that did exist could be managed by existing procedures at the sites.

DTSC subsequently reported to Defendants that Plaintiffs were no longer complying with the DTSC orders. Rather than any concern with Plaintiffs' cleanup efforts, the alleged reason for DTSC's noncompliance report is that Plaintiffs objected to being double-billed by both DTSC and Defendants for the $181,000 in costs preceding the state court conviction.

Plaintiffs filed the present lawsuit to challenge the DTSC consent orders and the actions taken by all defendants leading up to those orders. Plaintiffs do not plead claims arising from the plea agreement.

Defendants' response to Plaintiffs' allegations is emphatic: "This action arises out of the civil and criminal proceedings against Plaintiffs stemming from the finding of hazardous waste at all four of Plaintiffs' scrap metal sites in Butte County." MTD, at 1.

## II. OPINION

A. <u>Legal Standard</u>

A party may move to dismiss an action for failure to state a claim upon which relief can be granted pursuant to Federal Rule of

Civil Procedure 12(b)(6). In considering a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). Assertions that are mere "legal conclusions," however, are not entitled to the assumption of truth. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a plaintiff needs to plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Dismissal is appropriate where the plaintiff fails to state a claim supportable by a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

Upon granting a motion to dismiss for failure to state a claim, the court has discretion to allow leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

B.  Discussion

1.  Jurisdiction

Defendants raise three jurisdictional doctrines in their motion: the Rooker-Feldman doctrine, Younger abstention, and the exhaustion requirement established by Heck v. Humphrey. If any of these doctrines applies to the claims before the Court, the Court must grant Defendants' motion, or at least stay proceedings pending

6

resolution of the state court action.

### a) Heck v. Humphrey

Defendants argue that Plaintiffs' claims are barred by the rule set forth in Heck v. Humphrey, 512 U.S. 477 (1994), because Plaintiffs' success in this suit will call into question the validity of their state law convictions. MTD, at 5. Plaintiffs respond that success in this lawsuit does nothing to change the state law convictions, as the conduct at issue here is distinct from the state court criminal decisions. Opp., at 8.

The Heck rule is simple: "if finding in favor of a § 1983 plaintiff would necessarily imply the invalidity of his conviction or sentence the complaint must be dismissed." Szajer v. City of L.A., 632 F.3d 607, 611 (9th Cir. 2011) (quoting Heck, 512 U.S. at 486-87).

Defendants offer two cases to support the argument that Plaintiffs' lawsuit calls into question the validity of Plaintiffs' state court conviction. First, they rely on Szajer. MTD, at 9. In Szajer, the plaintiffs were convicted of illegally possessing a particular weapon in state court based on nolo contendere pleas. Szajer, 632 F.3d at 609. The only evidence supporting their convictions was found when the police executed a search warrant at the plaintiffs' business and home. Id. The plaintiffs did not contest or question the legality of the searches during the course of the state proceedings. Id. After entering their pleas, the plaintiffs filed suit in federal court to recover damages for what they alleged were illegal searches. Id. at 609-10. The court held that declaring the search warrant invalid necessarily called into question the state court conviction because there was no evidence

other than that recovered by the police during the execution of the search warrant to support the charge that they illegally possessed the weapon. Id. at 612. The Szajer court noted that the plaintiffs did not provide "any other basis for the discovery of the assault weapon found in their home, which formed the basis of the plea conviction." Id.

Plaintiffs in this case respond to Szajer by contending that other evidence can provide a basis for their state court conviction independently of the DTSC orders and investigation. Opp., at 10. This information includes admissions of Plaintiff Scott, observations made by Defendant Barber, and allegations of unsafe working methods used by Plaintiffs at one of their facilities. Id.

Defendants next rely upon Price v. Schwarzenegger, 344 F. App'x 375 (9th Cir. 2009). In Price, the plaintiff brought a federal action alleging denial of due process at a parole hearing and in the imposition of a mandatory parole term. Id. at 375. The court dismissed the claim challenging the mandatory parole term on the grounds that the parole term was a statutorily required consequence of the guilty plea in the prior state court proceeding. Id. at 376. Since the only way to avoid parole was to invalidate the plea agreement itself, the court held that Heck barred the federal court action. Id. Defendants rely on Price on the grounds that the DTSC orders became a mandatory consequence of their plea agreement, and, therefore, like Price, Plaintiffs' request to invalidate the DTSC Order is barred by Heck. Reply, at 4.

Plaintiffs respond to Defendants' arguments by claiming that successfully challenging the DTSC Orders in this federal action against Defendants will not change the status of their state court

convictions.  Plaintiffs argue that the state court conviction is based on their nolo contendere pleas, not the legal validity of the DTSC orders. Plaintiffs cite two Ninth Circuit cases in support of their argument that a conviction based on a nolo contendere plea does not in any way depend on the validity of the evidence underlying the conviction.  <u>Lockett v. Ericson</u>, — F.3d —, 2011 WL 3836467, at *4 (9th Cir. Aug. 31, 2011) (citing <u>Ove v. Gwinn</u>, 264 F.3d 817, 823 (9th Cir. 2001)). Plaintiffs' argument fails for two reasons.  First, in this case the DTSC orders are not evidence used to support the plea agreement, they are prospective requirements of the plea agreement and the state court terms of probation.  Second, permitting Defendants to challenge the DTSC orders in federal court would effectively invalidate the state court's mandate that Plaintiffs abide by the terms of those orders.  This is exactly the kind of action barred by <u>Heck</u>, and <u>Lockett</u>'s holding is inapplicable to the facts of the present case.

  Defendants' position is clearly supported by both <u>Price</u> and <u>Szajer</u>.  In <u>Price</u>, the "mandatory consequence" of the plaintiff's guilty plea, the term of parole, was deemed inseparable from the plea agreement.  <u>Price</u>, 344 F. App'x. at 376.  In this case, the terms of the DTSC orders are incorporated by reference in the plea agreement itself and are similarly inseparable.  In <u>Price</u>, invalidating the parole term also invalidated the plea agreement, and that is the functional effect in this case as well.  The DTSC orders are clearly a mandatory term of Plaintiffs' plea agreement. <u>Heck</u>, as explained by <u>Szajer</u> and <u>Price</u>, bars Plaintiffs' federal claims against Defendants.

  Accordingly, the Court GRANTS Defendants' motion to dismiss on

these grounds.

### a) The Rooker-Feldman Doctrine & Younger Abstention

Having granted dismissal on the basis of Heck v. Humphrey, the Court need not reach Defendants' motion insofar as it relies on the Rooker-Feldman doctrine and Younger abstention. The Court also declines to reach Defendants' argument that Plaintiffs failed to properly plead an equal protection claim.

### 2. Defendants' Immunity

Defendants also seek dismissal claiming that they are immune from suit. The Court will address each of the three immunities raised by Defendants and finds, as an alternative ground for dismissal, that Defendants have qualified immunity in this action.

### a) Absolute Immunity

Defendants argue that they are absolutely immune from suit because prosecutors enjoy absolute immunity for actions taken as officers of the court. Plaintiffs respond that there is no absolute immunity for Defendants' actions because Plaintiffs' claims stem from two areas where absolute immunity is not applicable: 1) giving advice to police during an investigation, and 2) making statements to the press.

Prosecutors are absolutely immune from liability under Section 1983 for their conduct in initiating a prosecution when the conduct is intimately associated with the judicial phase of the criminal process. Burns v. Reed, 500 U.S. 478, 486 (1991) (internal citations omitted). Absolute prosecutorial immunity only extends to suits for damages, it does not bar suits for prospective injunctive relief. Supreme Court of Virginia v. Consumers Union of

the United States, Inc., 446 U.S. 719, 736-37 (1980).[2]

The Ninth Circuit explained when absolute prosecutorial immunity is applicable:

> [T]he actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor. Prosecutorial immunity depends on the nature of the function performed, not the identity of the actor who performed it. Prosecutors are entitled to qualified immunity, rather than absolute immunity, when they perform administrative functions, or investigative functions normally performed by a detective or police officer.

Genzler v. Longanbach, 410 F.3d 630, 636 (9th Cir. 2005) (internal citations omitted). Since absolute immunity only applies when prosecutors perform functions intimately associated with the judicial process, it does not apply when prosecutors perform the same function as police during the early stages of an investigation, or when prosecutors hold a defamatory press conference. Id. at 637 (citing Buckley v. Fitzsimmons, 509 U.S. 259, 270 (1993)).

Defendants argue that once Defendant Barber collected a sample from Plaintiffs property and it tested positive for hazardous waste, probable cause existed and absolute immunity kicked in at that point. Defendants are incorrect, however, because there is no bright line rule for when absolute immunity applies. Genzler, 410 F.3d at 637 ("The analysis of whether prosecutorial acts constitute

---

[2] Only defendants Barber and Thomas are sued for damages in Plaintiffs' first cause of action. FAC, at 41. Plaintiffs do, however, indicate that Defendant Ramsey "ratified" Defendants Barber and Thomas's conduct. FAC, at 42. Plaintiffs have not clearly stated a claim against Mr. Ramsey, but even if they had, he is immune from § 1983 liability because he is a state official and not a "person" for § 1983 purposes. Weiner v. San Diego County, 210 F.3d 1025, 1031 (9th Cir. 2000) (holding that a district attorney is a state official when prosecuting a criminal violation and is not subject to § 1983 liability).

11

advocacy or police-type investigative work is complicated by the fact that the Supreme Court has resisted any attempt to draw a bright-line between the two."). The analysis focuses on the type of activity performed and its relation to the judicial process. Id. at 637-38.

In this case, Plaintiffs argue that Defendants do not enjoy absolute immunity for the advice that they provided to DTSC. The allegation is that Defendant Barber assisted DTSC in investigating Plaintiffs' assets and the best course of action to take in assessing DTSC penalties, as distinct from the subsequent criminal prosecution. Opp., at 16. The problem with Plaintiffs' position, however, is that they do not indicate how giving advice to DTSC is necessarily separate from the work Defendants did in preparing their own criminal prosecution of Plaintiffs. While it is true that establishing probable cause does not necessarily establish absolute prosecutorial immunity, in this case Defendants were engaging in their own prosecution. Plaintiffs do not cite authority that suggests that sharing resources and recommendations with a state regulatory agency, DTSC, is grounds upon which absolute immunity can be denied or waived.

The proper inquiry is instead whether or not Defendants' investigatory work "is of the type normally done by police . . . or whether an investigation is bound up with the judicial process . . . ." Genzler, 410 F.3d at 638. In the present case, Defendants clearly explain that they were working with DTSC in an investigatory capacity to gather evidence prior to the December 2007 to January 2008 period, when the decision to initiate criminal prosecution was finally made. MTD, at 1. Defendants agree that

12

they spent over 40 hours planning the execution of a search warrant on Plaintiffs' properties and conducting an asset search on Plaintiffs. Id. These actions give rise to Plaintiffs' claims, not the later decision to initiate a criminal prosecution. Considering that the decision to prosecute either civilly or criminally was not made until after the execution of the search warrant (MTD, at 1), Defendants' investigatory efforts were too attenuated from the judicial process to support absolute immunity.

Plaintiffs' complaint alleges that Defendants engaged in police-like investigatory actions prior to initiating judicial proceedings. Absolute prosecutorial immunity does not extend to such actions. Defendant Ramsey has been sued only in his official capacity for injunctive relief, and absolute immunity does not limit that claim. FAC, at 42; Supreme Court of Virginia, 446 U.S. at 736-37. Accordingly, Defendants' motion to dismiss on these grounds is DENIED.

    b)   Sovereign Immunity

Defendants also argue that Plaintiffs' second claim for relief against Defendant Ramsey in his official capacity is barred by the 11th Amendment to the United States Constitution.

Prospective injunctive relief against state officials in their official capacity is not prohibited by the 11th Amendment. Edelman v. Jordan, 415 U.S. 651, 664 (1974) (citing Ex parte Young, 209 U.S. 123 (1908)). Retroactive equitable relief which is the equivalent of requiring a payment made out of the state treasury is barred by the 11th Amendment, but prospective injunctive relief is not. Id. at 668-69.

In this case, Plaintiffs seek to enjoin enforcement of the

DTSC Orders prospectively, which will not require any payment from the state treasury. The 11th Amendment does not bar this claim.

### c) Qualified Immunity

Defendants finally argue that they are immune from suit in this instance because of qualified immunity. Plaintiffs respond that there was no rational basis for Defendants' decision to investigate Plaintiffs' property for hazardous substances, making qualified immunity inapplicable.

The doctrine of qualified immunity shields public officials sued in their individual capacity from monetary damages, unless their conduct violates "clearly established" law that would be known to a reasonable public officer. Saucier v. Katz, 533 U.S. 194, 199 (2001).

The Court must make a two-step inquiry in deciding the issue of qualified immunity. Saucier, 533 U.S. at 200. First, the court must determine whether, under the facts alleged, taken in the light most favorable to the plaintiff, a violation of a constitutional right occurred. Id. If so, the court must then ask whether the constitutional right was clearly established at the time of the violation. Id.

Initially, the Supreme Court in Saucier held that these two inquiries must be decided in rigid order. Saucier, 533 U.S. at 200. That is, a district court had to resolve whether a violation of a constitutional right occurred before it could evaluate whether the right was clearly established. Recognizing, however, that "there are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right," the Supreme Court recently relaxed the

order of analysis. Pearson v. Callahan, 555 U.S. 223, 237 (2009). In Pearson, the Court held that the Saucier analysis may be addressed in either order if the second step is clearly dispositive and can address the matter efficiently. Id. at 241-42.

    In this case, the parties do not dispute that Plaintiffs' allegations concern a clearly established constitutional right: violation of the 14th Amendment's guarantee of equal protection. The Court is only left with deciding whether or not Plaintiffs adequately allege an actual violation of that right.

    Plaintiffs claim that the DTSC investigation, assisted and encouraged by Defendants, had no rational basis. Opp., at 19. Plaintiffs allege that DTSC neither produced evidence to support a rational basis for the investigation of Plaintiffs' properties, nor did they show that other similarly situated scrap metal facilities were also investigated. Id. Plaintiffs' claim is that they, as a class of one, were intentionally treated differently from other scrap yards. Id. at 20. Defendants respond that the sample obtained by Defendant Barber from Plaintiffs' property that tested positive for hazardous waste according to the DTSC provided the rational basis for the investigation. MTD, at 15. Further, Defendants argue that merely pointing out that other scrap metal facilities were not investigated is insufficient to show an equal protection violation. Id. at 15-16.

    A valid class of one claim arises where an entity can show that it has been "intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

Plaintiffs did not adequately plead that Defendants violated their right to equal protection, and the arguments in their briefs indicate that they may not be able to. Plaintiffs' Opposition, for example, focuses on DTSC's actions because this suit does not challenge Plaintiffs' criminal conviction, for which Defendants are responsible. It was, Plaintiffs allege, DTSC that failed to properly test materials retrieved from Plaintiffs' properties. Defendants merely "assisted and encouraged" DTSC. Opp., at 19. Plaintiffs also argue, in an attempt to overcome the Heck bar discussed above, that Defendants based their investigation and prosecution on other evidence including Defendant Barber's observations and Plaintiff Scott's own admissions. If the DTSC testing did not provide a rational basis for Defendants' investigation, then this other information did. Plaintiffs pleaded their equal protection claim in an attempt to win the Heck battle, but as a result they lose the war.

It is also meaningful that Plaintiffs do not allege that any other similarly situated scrap metal facility tested positive for hazardous waste. It is not enough for Plaintiffs to allege that other scrap metal facilities are not subject to DTSC enforcement actions. They must also allege that these other scrap metal facilities tested positive for hazardous waste and despite that, Defendants chose to only investigate Plaintiffs. "To succeed, plaintiffs must demonstrate that they were treated differently than someone who is prima facie identical in all relevant respects[,]" but they have not done that. Occhionero v. City of Fresno, No. CV F 05-1184 LJO SMS, 2008 WL 2690431, at *9 (E.D. Cal. July 3, 2008) (internal quotations omitted).

The Court finds that Plaintiffs' allegations indicate that there was a rational basis for Defendants' investigation. Defendants are alleged to have relied on the DTSC testing and other independent evidence to support their investigation.  Further, Plaintiffs have not pleaded that any other similarly situated scrap metal facility was not investigated despite testing positive for hazardous waste.  Accordingly, the motion to dismiss the claims against Defendants in their individual capacities is also GRANTED on the alternative grounds that Defendants have qualified immunity from suit.

### III. ORDER

For all the foregoing reasons, it is hereby ordered that all of Plaintiffs' claims against Defendants are dismissed with prejudice.

IT IS SO ORDERED.

Dated:  November 22, 2011

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE