UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHICO SCRAP METAL, INC., a California corporation; GEORGE W. SCOTT, SR., individually and as trustee of GEORGE W. SCOTT, SR. REVOCABLE INTER VIVOS TRUST DATED SEPTEMBER 25, 1995, <br><br>                    Plaintiffs, <br><br>     v. <br><br>DEBBIE RAPHAEL, in her official capacity as Director of California Department of Toxic Substances Control; LEONARD ROBINSON, in his official capacity as former Acting Director of the California Department of Toxic Substances Control; RAYMOND LECLERC, in his official capacity as the Assistant Deputy Director of California Department of Toxic Substances; DIANE SHERIDAN, in her official capacity as an employee of California Department of Toxic Substances Control; NANCY LANCASTER, an individual; SAMUEL MARTINEZ, JR, an individual; VIVIAN MURAI, an individual; STEVEN BECKER, an individual; LEONA WINNER, an individual; MICHAEL RAMSEY, in his official capacity as District Attorney of Butte | Case No. 2:11-CV-1201-JAM-CMK <br><br> ORDER GRANTING DTSC DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT |

1

| | |
|---|---|
| County; HAROLD THOMAS, an individual; GEORGE BARBER, an individual; and DOES 1-20, inclusive, | ) ) ) ) ) ) |
| Defendants. | ) ) |

This matter comes before the Court on Defendants Debbie Raphael in her official capacity as Director of the California Department of Toxic Substances Control ("DTSC"), Leonard Robinson in his official capacity as former Acting Director of DTSC, Raymond LeClerc in his official capacity as the Assistant Deputy Director of DTSC, Diane Sheridan in her official capacity as an employee of DTSC, Nancy Lancaster in her individual capacity, Samuel Martinez, Jr. in his individual capacity, Vivian Murai in her individual capacity, Steven Becker in his individual capacity, and Leona Winner in her individual capacity's (collectively "Defendants") Motion to Dismiss Plaintiffs' Amended Complaint ("MTD") (Doc. #30).[1]  Plaintiffs George Scott, Sr. and Chico Scrap Metal, Inc. (collectively "Plaintiffs") Plaintiffs' oppose the DTSC Defendants' Motion to Dismiss ("Opposition") (Doc. #46).  Defendants filed a Reply to Opposition to Motion to Dismiss (Doc. #49). For the reasons set forth below, Defendants' motion is GRANTED.

I. FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

This action arises out of state enforcement of hazardous waste laws against Plaintiffs at four operating scrap metal facilities. Defendants, all associated with DTSC, initiated an investigation and then allegedly acted with the Office of the Butte County

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was originally scheduled for September 21, 2011.

2

1  District Attorney (the "District Attorney"), members of which are
2  also defendants in this action, to impose clean-up requirements on
3  Plaintiffs' four commercial properties.  Plaintiffs bring three
4  causes of action against Defendants in their First Amended
5  Complaint ("FAC") (Doc. #17).  They seek (1) injunctive relief and
6  (2) damages pursuant to 42 U.S.C. § 1983.  Plaintiffs also seek
7  (3) a declaration of the Defendants' legal right to continue
8  enforcing existing clean-up orders.
9       Beginning in 2007, DTSC, working with the District Attorney,
10 investigated Plaintiffs for various criminal violations related to
11 the operation of Chico Scrap Metal.  Plaintiffs allege that the
12 investigation was not intended to enforce California hazardous
13 waste laws, but that the investigation was instead intended to
14 produce revenue for DTSC and the Butte County District Attorney's
15 Office.  Plaintiffs also allege that the motivation for the
16 investigation was not to protect the public health or enforce the
17 law because the primary motivation was revenue generation through
18 the levying of fines and enforcement costs against Plaintiffs.
19      Defendants' investigation culminated in Plaintiffs' agreement
20 to several consent orders requiring compliance with a DTSC
21 monitored environmental remediation program.  Further, the District
22 Attorney filed criminal felony charges against Plaintiffs, leading
23 to Plaintiffs' pleas of nolo contendere as part of a plea
24 agreement.  The plea agreement between Plaintiffs and the District
25 Attorney referenced and incorporated the DTSC consent orders,
26 requiring compliance with them as a term of Plaintiffs' probation.

A. <u>Defendants' 2007 Investigation</u>

In 2007, Defendants started investigating Plaintiffs' business. The alleged basis for the investigation was a sample taken from one of the four sites operated by Plaintiffs. Plaintiffs claim that the sample was obtained through the reckless use of unsound testing methods in order to yield evidence of waste, which was subsequently mischaracterized as hazardous. Plaintiffs allege the following improprieties: (1) Defendants had no sampling plan; (2) Defendants did not apply the proper scrap metal industry exemptions to the sample; and (3) the testing performed on the samples was done incorrectly.

B. <u>The DTSC Orders and Plaintiffs' Criminal Conviction</u>

In 2008, both DTSC and the District Attorney carried out enforcement actions against Plaintiffs. After DTSC imposed an "Imminent Endangerment Order" shutting down one of Plaintiffs' sites, Plaintiffs agreed to consent orders that permitted DTSC to investigate and monitor Plaintiffs' businesses. The orders also required Plaintiffs to pay fees and costs to DTSC.

In October, 2008, Plaintiffs pleaded nolo contendere to a series of misdemeanors in state court pursuant to a plea agreement with the District Attorney. The District Attorney agreed to reduce all charges from felonies to misdemeanors. Plaintiffs agreed to pay $181,000 for investigation and cleanup costs incurred by DTSC up to that point. Further, Plaintiffs agreed to abide by the terms of the DTSC orders. Finally, Plaintiffs were fined $700,000 with $500,000 suspended pending successful completion of Plaintiffs' probation, but no term of imprisonment was imposed. While the plea agreement incorporates the DTSC orders, DTSC was not a party to the

4

plea agreement.

C.   Events Leading To the Present Litigation

Plaintiffs allege that they began to question the necessity of the DTSC and District Attorney actions for a number of reasons. First, Plaintiffs hired an independent expert in 2009, who is a former manager at the DTSC laboratory. That expert allegedly identified various deficiencies in the testing system used by DTSC on samples taken from Plaintiffs' properties. Then, in 2010 and 2011, Plaintiffs allege that DTSC investigations at two out of four Chico Scrap Metal properties determined that no hazardous waste existed. Plaintiffs claim that DTSC was not willing to modify its orders, even though Plaintiffs' consultants determined that any problems that did exist could be managed by existing procedures at the sites.

Defendants subsequently reported to the District Attorney that Plaintiffs were no longer complying with the DTSC orders in violation of their plea agreement. Plaintiffs allege that the reason for Defendants' noncompliance report, is that Plaintiffs objected to being double-billed by both DTSC and the District Attorney for the $181,000 in costs preceding the state court conviction. Ongoing proceedings in state court are addressing this issue.

Defendants' response to Plaintiffs' allegations is emphatic: "This action arises out of the illegal dumping of toxic chemicals by Plaintiffs in Butte County. Plaintiffs were caught disposing of highly toxic materials . . . by dumping them in open fields near the City of Oroville." MTD, at 3.

II.   OPINION

A.   Legal Standard

A party may move to dismiss an action for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  In considering a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  Assertions that are mere "legal conclusions," however, are not entitled to the assumption of truth.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To survive a motion to dismiss, a plaintiff needs to plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570. Dismissal is appropriate where the plaintiff fails to state a claim supportable by a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

Upon granting a motion to dismiss for failure to state a claim, the court has discretion to allow leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment."  Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

B.   Discussion

Defendants raise three jurisdictional doctrines in their motion: the Rooker-Feldman doctrine, Younger abstention, and the

exhaustion requirement established by Heck v. Humphrey.  If any of these doctrines applies to the claims before the Court, the Court must grant Defendants' motion, or at least stay proceedings pending resolution of the state court action.  Defendants do not otherwise challenge the sufficiency of the allegations contained in the First Amended Complaint.

         1.   Heck v. Humphrey

Defendants argue that Plaintiffs' claims are barred by the rule set forth in Heck v. Humphrey, 512 U.S. 477 (1994), because Plaintiffs' success in this suit will call into question the validity of their state law convictions.  MTD, at 9.  Plaintiffs respond that success in this lawsuit does nothing to change the state law convictions, as the conduct at issue here is distinct from the state court criminal decisions.  Opp., at 8.

The Heck rule is simple: "if finding in favor of a § 1983 plaintiff would necessarily imply the invalidity of his conviction or sentence the complaint must be dismissed."  Szajer v. City of L.A., 632 F.3d 607, 611 (9th Cir. 2011) (quoting Heck, 512 U.S. at 486-87).

Defendants offer two cases to support the argument that Plaintiffs' lawsuit calls into question the validity of Plaintiffs' state court conviction.  First, they rely on Szajer.  Reply, at 6-7.  In Szajer, the plaintiffs were convicted of illegally possessing a particular weapon in state court based on nolo contendere pleas.  Szajer, 632 F.3d at 609.  The only evidence supporting their convictions was found when the police executed a search warrant at the plaintiffs' business and home.  Id.  The plaintiffs did not contest or question the legality of the searches

during the course of the state proceedings. Id. After entering their pleas, the plaintiffs filed suit in federal court to recover damages for what they alleged were illegal searches. Id. at 609-10. The court held that declaring the search warrant invalid necessarily called into question the state court conviction because there was no evidence other than that recovered by the police during the execution of the search warrant to support the charge that they illegally possessed the weapon. Id. at 612. The Szajer court noted that the plaintiffs did not provide "any other basis for the discovery of the assault weapon found in their home, which formed the basis of the plea conviction." Id.

Plaintiffs in this case respond to Szajer by contending that other evidence can provide a basis for their state court conviction independently of the DTSC orders and investigation. Opp., at 10. This information includes admissions of Plaintiff Scott, observations made by Defendant Barber, and allegations of unsafe working methods used by Plaintiffs at one of their facilities. Id.

Defendants next rely upon Price v. Schwarzenegger, 344 F. App'x 375 (9th Cir. 2009). In Price, the plaintiff brought a federal action alleging denial of due process at a parole hearing and in the imposition of a mandatory parole term. Id. at 375. The court dismissed the claim challenging the mandatory parole term on the grounds that the parole term was a statutorily required consequence of the guilty plea in the prior state court proceeding. Id. at 376. Since the only way to avoid parole was to invalidate the plea agreement itself, the court held that Heck barred the federal court action. Id. Defendants rely on Price on the grounds that in order to grant Plaintiffs the relief they seek, this Court

8

would have to invalidate the DTSC Orders which are the central provisions of the pleas agreement and sentencing order. Under Price, this is not permitted.   Reply, at 7.

Plaintiffs respond to Defendants' arguments by claiming that successfully challenging the DTSC Orders in this federal action against Defendants will not change the status of their state court convictions.  Plaintiffs argue that the state court conviction is based on their nolo contendere pleas, not the legal validity of the DTSC orders.

Plaintiffs cite two Ninth circuit cases in support of their argument that a conviction based on a nolo contendere plea does not in any way depend on the validity of the evidence underlying the conviction.  Lockett v. Ericson, — F.3d —, 2011 WL 3836467, at *4 (9th Cir. Aug. 31, 2011) (citing Ove v. Gwinn, 264 F.3d 817, 823 (9th Cir. 2001)).  Plaintiffs' argument fails for two reasons. First, in this case the DTSC orders are not evidence used to support the plea agreement, they are prospective requirements of the plea agreement and the state court terms of probation.  Second, permitting Defendants to challenge the DTSC orders in federal court would effectively invalidate the state court's mandate that Plaintiffs abide by the terms of those orders.  This is exactly the kind of action barred by Heck, and Lockett's holding is inapplicable to the facts of the present case.

Defendants' position is clearly supported by both Price and Szajer.  In Price, the "mandatory consequence" of the plaintiff's guilty plea, the term of parole, was deemed inseparable from the plea agreement.  Price, 344 F. App'x. at 376.  In this case, the terms of the DTSC orders are incorporated by reference in the plea

agreement itself and are similarly inseparable.  In Price, invalidating the parole term also invalidated the plea agreement, and that is the functional effect in this case as well.  The DTSC orders are clearly a mandatory term of Plaintiffs' plea agreement. Heck, as explained by Szajer and Price, bars Plaintiffs' federal claims against Defendants.

    Accordingly, the Court GRANTS Defendants' motion to dismiss on these grounds.

### 2. The Rooker-Feldman Doctrine & Younger Abstention

    Having granted dismissal on the basis of Heck v. Humphrey, the Court need not reach Defendants' motion insofar as it relies on the Rooker-Feldman doctrine and Younger abstention.

## III. ORDER

    For the foregoing reasons, Plaintiffs' claims against Defendants are dismissed with prejudice.

    IT IS SO ORDERED.

Dated: November 22, 2011

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

10